# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELENA DIAZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC,<br><br>　　　　Defendant. | Case No.  1:15-cv-00523-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAITNIFF'S MOTION TO REMAND BE GRANTED<br><br>ECF NO. 13<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

　　　　On April 20, 2015, Plaintiff Maria Elena Diaz ("Plaintiff") filed a motion to remand. (ECF No. 13.)  Defendant CarMax Auto Superstores California, LLC ("Defendant") filed an opposition on May 27, 2015.  (ECF No. 17.)

　　　　The matter was referred to the undersigned for Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.  (ECF No. 15.)  The hearing on Plaintiff's motion took place on June 10, 2015 at 10:00 a.m. in Courtroom 9 (SAB) before United States Magistrate Judge Stanley A. Boone.  Gregory Babitt appeared on behalf of Plaintiff.  Jamie Keeton and Edwin Essakhar appeared on behalf of Defendant.

　　　　For the reasons set forth below, the Court recommends that Plaintiff's motion be granted and this action be remanded to state court.

/ / /

# I.

# BACKGROUND

Defendant removed this action from the Superior Court of the State of California for the County of Stanislaus on April 3, 2015.  (ECF No. 1.)  Plaintiff raised two causes of action against Defendant: 1) for violation of the Consumers Legal Remedies Act, California Civil Code § 1750, et seq., and 2) for unfair business practices in violation of California Business & Professions Code § 17200.

Plaintiff alleges that she purchased a 2004 Volvo S60 ("the Subject Vehicle") from Defendant's car dealership in Modesto, California on February 21, 2012.  Defendant advertised the Subject Vehicle as being "certified" and "CarMax Quality Certified."  When Plaintiff asked Defendant's sales consultant, Alan Brima, about the Subject Vehicle's history, Mr. Brima falsely represented that the previous owner was "a rich person who got tired of it and wanted a new one."  In actuality, the Subject Vehicle had been sold at auction twice in the preceding three months and had been registered to a corporate owner.  Plaintiff also asked about the Subject Vehicle's mechanical condition, and Mr. Brima told Plaintiff that it was in sound mechanical condition.  Plaintiff asked for a CarFax Vehicle History Report, but was never provided with one.  Plaintiff was never shown a completed inspection report identifying the components CarMax inspected on the Subject Vehicle.

Approximately three weeks after purchasing the Subject Vehicle, Plaintiff attempted to fill the gas tank.  However, the Subject Vehicle would not accept gasoline and gasoline spilled from the tank while it was filled.

Plaintiff contends that Defendant violated the California Legal Remedies Act by advertising and selling the Subject Vehicle as certified without providing Plaintiff with a completed inspection report.  Plaintiff further contends that the Subject Vehicle was unmerchantable, in need of substantial repair, and that Defendant made misrepresentations regarding the Subject Vehicle's history and condition.

/ / /

/ / /

## II.

## LEGAL STANDARDS FOR MOTIONS TO REMAND

Removal of an action from state court to federal court is generally governed by 28 U.S.C. § 1441, which states, in pertinent part:

> (a)     Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Motions to remand are governed by 28 U.S.C. § 1447(c), which states, in pertinent part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

Removal statutes must be construed narrowly in favor of remand to protect the jurisdiction of state courts. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)).

## III.

## DISCUSSION

Plaintiff argues that diversity jurisdiction does not exist in this action because Plaintiff's claims do not meet the amount in controversy requirement.  Diversity jurisdiction is governed by 28 U.S.C. § 1332, which states that the Court has original jurisdiction of all civil actions between citizens of different states where the amount in controversy exceeds $75,000.

In diversity cases originally presented in state court and then removed to federal court, there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (citing Nishimoto v. Federman-Bachrach &

1  Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990); Emrich v. Touche Ross & Co., 846 F.2d 1190,
2  1195 (9th Cir. 1988)).  The removing defendant bears the burden of proving the amount in
3  controversy by a preponderance of evidence.  Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d
4  373, 376 (9th Cir. 1997) (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir.
5  1996)).

6  "If it is *unclear* what amount of damages the plaintiff has sought ... then the defendant
7  bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional
8  amount." Gaus, 980 F.2d at 566-67 (citing Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 763
9  (E.D. Mich. 1990)).  The amount in controversy inquiry in the removal context is not confined to
10 the face of the complaint.  Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).

11 Plaintiff's complaint is unclear as to the amount of damages sought.  Plaintiff's complaint
12 states:

> WHEREFORE, Plaintiff prays for judgment as follows:
> 1. For general damages according to proof at trial, excluding the Consumer Legal Remedies Act at this time, with recovery not to exceed $50,000.00;
> 2. For rescission of the purchase contract, with recovery not to exceed $50,000.00;
> 3. For incidental and consequential damages according to proof at trial, excluding the Consumers Legal Remedies Act at this time, with total recovery for all claims not to exceed $50,000.00;
> 4. For the equitable and injunctive relief permitted under Civil Code Section 1780 and Business & Professions Code Section 17200, with total recovery for all claims not to exceed $50,000.00;
> ...
> 8. No request for damages of any type are sought under the Consumer Legal Remedies Act at this time, but if there is a later damage claim, the total payment for all claims will not exceed $50,000.00; and
> 9. Relief under Business & Professions Code Section 17200 as provided by law, limited to $50,000.00 in damages.

23 (Compl., at pg. 10:23-11:15.)  The total aggregate damages sought in Plaintiff's complaint is
24 unclear.  Although Plaintiff limited each category of damages to $50,000.00, it is still possible
25 that all categories of damages will add up to exceed the amount-in-controversy requirement of
26 $75,000.00.

27 / / /
28 / / /

1.      Value of Plaintiff's Rescission Claim

Defendant argues that Plaintiff's claim for rescission should be valued at $17,918.58—the amount Plaintiff financed for the purchase of the vehicle. In actions for rescission, Courts have used the value of the object of the contract as the value of the rescission claim for the amount-in-controversy determination. See Garcia v. Citibank, N.A., No. 2:09-cv-03387-JAM-DAD, 2010 WL 1658569, at *2 (E.D. Cal. Apr. 23, 2010) (action for rescission of $221,000.00 loan agreement was valued at $221,000.00); see also Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000) (in action to rescind automobile purchase contract, amount in controversy was the full contract price paid). Accordingly, the Court uses the $17,918.58 figure in determining the amount in controversy in this action.[1]

2.      Plaintiff's Statement of Damages

Defendant also argues that Plaintiff submitted a "Statement of Damages" claiming $100,000.00 in actual damages and $300,000.00 in punitive damages. Plaintiff claims this statement of damages was erroneously filed. Defendant cites two cases where a plaintiff's statement of damages was used to satisfy the amount-in-controversy, Ortiz v. Sodexho, Inc., No. 10-cv-2224 JLS (RBB), 2011 WL 3204842 (S.D. Cal. Jul. 26, 2011); Zubair v. L'Oreal USA, Inc., No. 2:10-cv-01112-MCE-EFB, 2010 WL 2925074 (E.D. Cal. Jul. 23, 2010). However, neither case involved a plaintiff who claimed that the statement of damages was prepared in error. Accordingly, the Court finds that the statement of damages is relevant, but not necessarily dispositive with respect to the amount-in-controversy issue.

3.      Value of Plaintiff's Claim for Punitive Damages

Defendant argues that punitive damages should be considered in determining the amount in controversy in this action. "It is well established that punitive damages are part of the amount in controversy in a civil action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). The California Legal Remedies Act authorizes punitive damages. See Cal. Civ. Code §

---

[1] Defendant states that the $26,228.40 total amount of the Retail Installment Sale Contract would be a more accurate valuation of the rescission claim. However, this figure appears to be the total amount Plaintiff would make in payments on the monthly installment contract, inclusive of interest. Interest is not factored into the amount-in-controversy requirement. See 28 U.S.C. § 1332(a) ("...where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs...").

5

1780(a)(4). Punitive damages are not available for Plaintiff's unfair competition claims under California Business and Professions Code § 17200. <u>Clark v. Superior Court</u>, 50 Cal. 4th 605, 614 (2010).

"However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." <u>Burk v. Medical Savings Ins. Co.</u>, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). "Defendant must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000." <u>Id.</u> Other Courts have considered jury verdicts in analogous cases in determining whether punitive damages would push the amount in controversy over the jurisdictional limit. <u>See</u> <u>Campbell v. Hartford Life Ins. Co.</u>, 825 F. Supp. 2d 1005, 1008-1009 (E.D. Cal. 2011); <u>Burk</u>, 348 F. Supp. 2d at 1069; <u>Simmons v. PCR Technology</u>, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

In this action, Defendant does not identify any analogous cases involving awards of punitive damages, but instead relies on the general principle that punitive damage awards ranging from one to five times the amount of damages comport with due process. Based upon this general proposition, Defendant argues that a multiplier of five would exceed the amount in controversy requirement. However, since no analogous cases have been cited where punitive damages with a multiplier of five was assessed or even a case where any amount of punitive damages was assessed on facts similar to those alleged here, the Court finds that Defendant has not met its burden of proving the value of the punitive damages by a preponderance of evidence.

4. <u>Value of Plaintiff's Claim for Injunctive Relief</u>

Defendant argues that the equitable relief sought by Plaintiff would exceed $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>Hunt v. Washington State Apple Advertising Com'n</u>, 432 U.S. 333, 347 (1977). Both the California Legal Remedies Act and California Business and Professions Code § 17200, et seq., authorize injunctive relief. <u>See</u> Cal. Civ. Code § 1780(a)(2); Cal. Bus. & Prof. Code § 17203.

/ / /

6

However, the Court finds that Defendant has not proven the value of the declaratory and injunctive relief sought by Plaintiff in this action by a preponderance of evidence. As an initial matter, the Court notes that Defendant has introduced little evidence of its current business practices pertaining to the allegations in Plaintiff's complaint, i.e., the certification of used cars and the provision of information to customers regarding the certification process. Accordingly, it is unclear to what extent the events alleged in Plaintiff's complaint was the result of isolated incidents or systemic issues that must be addressed with company-wide training and changes in policy.

Defendant submitted a declaration from Christopher Sloan, Defendant's Director for Service Operations, estimating the costs associated with the injunctive relief requested. However, it appears that many of the costs associated with changes identified by Mr. Sloan are overstated because they are not necessarily changes that Plaintiff demanded in their claim for injunctive relief.

For example, Mr. Sloan provides the costs associated with creating "a new electronic CQI certificate." (Decl. of Christopher Sloan in Supp. of Def. CarMax Auto Superstores California, LLC's Opp'n to Pl.'s Mot. to Remand ("Sloan Decl.", at ¶ 5.) It is unclear why "a new electronic CQI certificate" would be necessary, why a new certificate would "involve graphics as well," or why "[b]ecause the document is colored, it would not be printed at the store..." (See Sloan Decl., at ¶ 5.) Plaintiff did not allege that California law required Defendant to provide customers with certificates which included graphics or which were printed in color. Similarly, Mr. Sloan states that all of Defendant's 2,673 employees would have to be trained for an additional hour, without explaining why any additional training is necessary. Mr. Sloan states that a "narrative" for each component inspected must be provided in a new CQI certificate, but, again, it is unclear why. Plaintiff's complaint appears to only seek an inspection report indicating the components that were inspected on the vehicles Defendant sells. It appears such a document already exists, it was just not provided to Plaintiff. (See Decl. of Hallen D. Rosner, at ¶ 2 and Ex. A.) Accordingly, it appears Defendant is overestimating the amount of work required to comply with Plaintiff's request for injunctive relief by incorporating costs for tasks

1 that go beyond what Plaintiff seeks through this action.

2 While the Court recognizes that Plaintiff's claim for injunctive relief would impose some cost on Defendant and that cost should be considered in evaluating the amount in controversy, Defendant carries the burden of proving that amount by a preponderance of evidence. The Court finds that Defendant's evidence does not establish a concrete amount for the Court to consider in assessing jurisdiction.

5. Value of Plaintiff's Claim for Attorney's Fees

Finally, Defendant argues that an award of attorney's fees in this case would push the amount in controversy beyond the jurisdictional limit. The parties dispute whether the Court should consider the amount of attorney's fees which had been incurred as of the date of removal, or whether the Court should consider the amount of attorney's fees which would be incurred in total through a potential trial in this matter.

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). A prevailing Plaintiff may recover attorney's fees in actions filed under the California Legal Remedies Act. Cal. Civ. Code § 1780(e).

Defendant argues that, "[p]er *Galt*, all attorney's fees which are likely to be incurred during the entire course of litigating this matter are properly considered part of the amount in controversy." (Def. CarMax Auto Superstores California, LLC's Opp'n to Pl.'s Mot. to Remand, at pg. 10:23-26.) However, Galt did not address whether the amount of attorney's fees should be determined based on what was incurred prior to removal or what would be incurred during the entire course of litigating.

Courts are split with respect to what amount of attorney's fees are properly included within the amount in controversy. See Reames v. AB Car Rental Services, Inc., 899 F. Supp. 2d 1012, 1018-20 (D. Ore. 2012) (and cases cited therein); Burk v. Medical Savings Ins. Co., 348 F. Supp. 2d 1063, 1068-69 (D. Ariz. 2004) (and cases cited t herein); Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002) (and cases cited therein). The Seventh

1 Circuit has held that only fees incurred as of the date the complaint is filed should be considered
2 in the amount in controversy because there is no controversy with respect to legal services which
3 have not been and may never be incurred. Gardynski-Leschuck v. Ford Motor Co., 142 F.3d
4 955, 958 (7th Cir. 1998). Other courts have included fees incurred as of the date of removal are
5 included in the amount in controversy. Reames v. AB Car Rental Services, Inc., 899 F. Supp. 2d
6 1012, 1020-21 (D. Ore. 2012); Faulkner v. Astro-Med, Inc., No. C 99-2562 SI, 1999 WL
7 820198, at *4 (N.D. Cal. 1999); Conrad Associates v. Hartford Acc. & Indem. Co., 994 F. Supp.
8 1196, 1200 (N.D. Cal. 1998). Still other courts have used a reasonable estimate of the fees likely
9 to be recovered in calculating the amount in controversy. Miera v. Dairyland Ins. Co., 143 F.3d
10 1337, 1340 (10th Cir. 1998); Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1011
11 (N.D. Cal. 2002); Simmons v. PCR Technology, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).
12 "While the Ninth Circuit Court of Appeals has not yet spoken on the issue, the Court notes that it
13 appears that a nascent consensus may be merging among the district courts of this Circuit,
14 finding that attorneys' fees not yet incurred may not be included in the amount in controversy
15 calculation." MIC Philberts Investments v. American Cas. Co. of Reading, Pa., No. 1:12-cv-
16 0131 AWI-BAM, 2012 WL 2118239, at *5 (E.D. Cal. Jun. 11, 2012).

17 The Court declines to decide one way or another how attorney's fees should be factored
18 into the amount in controversy analysis because, in any case, the Court finds that Defendant has
19 not met their burden in establishing that the attorney's fees in this case would be sufficient to
20 meet the jurisdictional requirement. Defendant submits the declaration of Kurt A. Schlichter,
21 Defendant's attorney, as evidence of Plaintiff's estimated attorney's fees. Defendant estimates
22 that Plaintiff would incur approximately $78,400 in attorney's fees in this action if it proceeded
23 through trial. This estimate is based on some questionable assumptions, such as Mr. Schlichter's
24 estimate that Plaintiff would incur $2,850 in post-trial attorney's fees on administrative tasks to
25 close out the case in the event that Plaintiff loses at trial. If Plaintiff loses at trial, she would not
26 be entitled to an award of attorney's fees, so it is unclear why these administrative tasks would
27 factor into an award for attorney's fees.
28 / / /

9

1       The Court is also dubious of Plaintiff's $78,400 estimate for attorney's fees in a lawsuit
2  arising from the purchase of a $17,918.58 car.  The Court recognizes that the potential for
3  punitive damages, injunctive relief and an attorney's fees award may drive up the amount
4  Plaintiff and her attorney may invest in this case.  The Court also recognizes that there are outlier
5  cases where the amount spent in attorney's fees goes far beyond the value of the underlying
6  object of the litigation.

7       The Court finds Defendant's claim that Plaintiff is <u>likely</u> to incur $78,400 in attorney's
8  fees—over four times the value of the car at issue—to be facially implausible.  Given the value
9  of the object of this lawsuit, it is more likely than not that this action will settle before trial or at
10 the very least Plaintiff limit the amount of time they invest in this lawsuit if they did go to trial.
11 Common sense dictates that it is more likely that one side or the other will cut the cord before
12 attorney's fees gets that out of hand in a lawsuit involving a $17,918.58 car, particularly when
13 the true exposure on the rescission claim is likely to be substantially less than $17,918.58
14 considering the fact that the losing party would at least get to keep the car.  While the Court
15 understands that extraordinary circumstances may exist that justify Defendant's $78,400 estimate
16 for attorney's fees in this action, Defendant carries the burden of demonstrating the existence of
17 such extraordinary circumstances.  Defendant has not presented sufficient evidence supporting
18 their claim that it is likely that Plaintiff would expend $78,400 going to trial on a lawsuit
19 involving a $17,918.58 car.

20      Given the totality of the Court's analysis of the amount-in-controversy issue thus far,
21 Defendant would have to demonstrate that it is likely that Plaintiff would incur $57,081.42[2] in
22 attorney's fees to meet the $75,000.00 jurisdictional threshold.  Even an attorney's fee figure of
23 $57,081.42 seems implausible in an action seeking rescission on the purchase of a $17,918.58
24 car.  The Court finds that Defendant has not met its burden of demonstrating that the amount of
25 attorney's fees pushes the amount-in-controversy over the jurisdictional limit.

26 / / /

---

[2] $75,000 - $17,918.58 = $57,081.42.  For the reasons expressed above, the Court finds that Defendant has not carried its burden of demonstrating an amount in controversy beyond the $17,918.58 value attached to Plaintiff's rescission claim.

## IV.

## CONCLUSION AND ORDER

The Court finds that diversity jurisdiction over this action is lacking because Defendant has not carried its burden of demonstrating by a preponderance of evidence that the amount-in-controversy requirement has been met.  This finding is premised in part by the Court's obligation to construe removal statutes narrowly in favor of remand to protect the jurisdiction of state courts and the Court's obligation to reject federal jurisdiction if there is any doubt as to the right of removal in the first instance.  Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)).

Based upon the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion to remand be GRANTED; and
2. This action be remanded to the Superior Court of California for the County of Stanislaus.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 16, 2015**

UNITED STATES MAGISTRATE JUDGE